[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPEAL FROM ASSESSMENT OF DAMAGES AND BENEFITS BY THE COMMISSIONER OF TRANSPORTATION
The applicant, Tilcon Minerals, Inc. is aggrieved by the Commissioner's finding and appraisal of damages in the sum of $166,000 necessary for the layout, alteration, extension, widening, change of grade or improvement of the state highway commonly known as Foxon Road, Route 80, North Branford, Connecticut. The applicant alleges such assessment of damages is inadequate and is a predicate for its claim of aggrievement and hereby applies for a reassessment thereof.
Exhibit 1 and Exhibit 2 attached to "Notice of Condemnation and Assessment of Damages" accompanied the Writ Summons and Appeal at the time due and legal service was accepted for the commissioner on November 10, 1998.
The four day trial was followed by a visit and viewing of the entire area including Routes 22 and 80 and Site 1 and Site 2. (Plaintiffs Exhibit P). The location of Site 1 is generally identified as the southwesterly side of Foxon Road (Route 80) and westerly side of Twin Lakes Road, North Branford. The location of Site 2 is generally identified as the easterly side of (Route 22) and northeasterly side of Foxon Road (Route 80). Tilcon's appraisal report, dated January 27, 2000, signed by Robert J. Mulready, Connecticut License #856, Certified General Appraiser, recites the following facts. Site 1 above identified location contains the existing and proposed setthng lagoons. Site 2 above identified location, contains the quarry processing and crushing CT Page 8251 equipment, the asphalt plant and stock piles. The tree buffer was located along the frontage of a portion of Site 2, north side of Route 80. The highest and best uses of Sites 1 and 2 are their current use. Site 1 is zoned B-1, business and Site 2 is zoned I-i industrial quarry. The sales comparison, or market data approach was determined to be the most reliable method to determine the value of subject property. Mr. Mulready relied upon six (6) comparable sales all within two (2) years of the taking and located within the general market area, before and after the taking. Operations involved processing and production of asphalt, sand, gravel and finished rock; resulting in pollution by noise and air; dust and airborne particulates, smells and noise which are enhanced by continuous heavy truck traffic; an existing storm water detention lagoon treats storm water from the area; mined trap rock is processed by crushing and screening; a bituminous concrete plant operates twenty-four hours a day with two production shifts and a maintenance shift from March to December; accumulated storm water is collected and piped under Route 80 to the settling lagoon; the Connecticut DEP General Permit controls this obligation; North Branford zoning regulations also govern; storm water discharge from the settling basin and required monitoring reports to DEP indicate Tilcon has not exceeded the discharge limits of the General Permit.
North Branford Zoning Regulations mandate a site operation plan from the North Branford Planning Zoning Commission for its approval every five years and a documentation that it conforms to Section 51 performance standards. This mandates businesses to conform to the standards of all relevant local, state and federal codes, ordinances or regulations, whichever is more restrictive. It orders control of smoke, gas fumes, fly and ash dust and odors. It controls and presents a noise decibel level which endangers the public health and safety or impairs safety on or the value and reasonable use of any other lot.
Operation of Tilcon's business is contingent upon continuing approval of local planning and zoning; local zoning regulations require trees to buffer quarry and asphalt plant operations for business and residences on the south side of Route 80; trees reduce fugitive dust and noise from said operations; replacement of trees are required to remain in compliance with local zoning regulations; the trees were described as an "optimal buffer" by the acting dean of Yale University's School of Forestry and Environmental Studies containing rows of evergreen trees, planted parallel and staggered with minimal gaps, containing conifer trees of different sizes, which accomplish visual screening, particulate removal, sound and wind reduction contributing to improve quality of the roadside and surrounding environment; trees serve as a visual screen, attenuate noise, alter the microclimate by reducing wind velocity and remove air pollutants from the atmosphere; said observations on November CT Page 8252 6, 1998 were made prior to removal of any trees; said buffer contained, three parallel rows, 80 yards in length with 79 trees, consisting of eastern white pine. Norway spruce, white spruce and Douglas fir, 25-6 foot white pines, 24-12 foot white pines and 30 mature conifers in the10-14 DBH class; some mature trees were more than 30 years old and all were healthy; this tree buffer was of high efficiency for removing airborne particulates because of how it was planted and configured and because it consisted of large evergreens; the tree buffer was "precisely what you would plant for efficiently particulate removal"; the tree buffer performed its function by removing large and coarse particulates from the air by acting as a windbreak, slowing the movement of air and allowing the large particles to fall to the ground of Tilcon's property; small and fine airborne particles were removed by the evergreen needles; air mass moving through the needles were physically impacted on the needles, eventually washed off by rain and ended up on Tilcon's property; the amount of fine particles impacted on the leaves is related to the ratio of the surface of the foliage to the volume of the foliage and that the conifer needles have a lot of sufface per volume and are very effective in removing particulate matter; the spruce, pine and Douglas fir trees which made up this buffer had a much greater surface to volume ratio than would arborvitae plants and did a more efficient job in removing particles than would arborvitae bushes; to achieve the same effectiveness of the tree buffer it was recommended that it be replicated; if the tree buffer is not replaced prevailing northwest winds will carry the dust and other particulates from Tilcon's operations across Route 80 to the business and residential properties.
Tilcon seeks replacement of all trees removed by the DOT at a replacement "Cost" of $497,400. This calculation is to provide replacement with similar trees to be replanted on Tilcon's property. The special circumstances and facts of this case claimed by Tilcon are that the removal of the tree buffer by DOT and noise, dust and other pollutants from Tilcon's present operation result in the loss of the tree buffer and support Tilcon's claim that its remaining property is not suited for its prior use unless the tree buffer is replaced. Additionally Tilcon claims part of the cost to construct a settling basin properly to treat the additional storm water piped under Route 80 to the settling lagoon. This additional claim is that its remaining property is also not suited for its prior use unless a new settling lagoon is constructed.
Both of these claims or theories are disputed by the DOT. Testimony from Brian Marchi, who performs appraisals for the DOT substantiate these disputes.
Robert J. Mulready appraised 16.678 acres of land and improvements on the southerly side of Foxon Road, Route 80 prior to the taking of 26,685 CT Page 8253 square feet of land (.61 acres) by the State of Connecticut. He also appraised 16.065 acres, after said taking in the Town of North Branford. Additionally he appraised 201+ 1-acre of land on the north side of Foxon Road and the east side of Forrest Road, Route 22, prior to the taking of 18,292 square feet by the State (.42 acres) and 19.58 acres of land after said taking of land by the State.
 Opinion of Fair Market Value on June 26, 1986 S Side Rt. 80 N Side Rt. 80
Before taking $871,000 $1,000,000 After taking 629,000 438,000 Net damages 242,000 562,000
Total claimed damages: $804,000
Tilcon seeks severance damages defined as the damage done to the value of the property by virtue of some adverse action over and above the loss of the value of the land taken. It may be the cost to cure the negative impact or the cost of lost value where a property is negatively impacted.
The Mulready Appraisal Report and his testimony reviewed and approved Dr. Smith's computation of replacement costs, physical damages and severance damages resulting from the removal of the tree buffer. These special circumstances and fact support an award to compensate for the trees. Gontarz v. Berlin, 154 Conn. 695, 697 (1967).
 "The proper measure of damages is the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter."
The Mulready Appraisal Report applied this proper measure of damages. The court accepted the testimony of (Dr. Smith) the expert witness and his experience as credible evidence.
The dispute resulting from the increased storm water issue and settlement area is real and a direct result of the special circumstances and facts of this condemnation. Tilcon has the obligation to remain in compliance with the regulations of its General Permit. Testimony concerning the proposed new settling basin and lagoon presented ample evidence supporting the need for an adequate solution. One conclusion is certain, overburdening the existing lagoon and system must be avoided. The rate of flow expected could vary from 40 CFS to 75 CFS to 111 CFS to CT Page 8254 134 CFS to 138 CFS.
The court's function is to award just compensation for the property taken. The court should take into consideration changes contemplated in improvements and those which are so possible of occurrence in the future that they may reasonably be held to affect the market value. Here again the Mulready Appraisal Report provided the court with sufficient evidence to conclude that it is reasonably probable that the land taken and changes contemplated in the drainage and lagoon improvements are so possible of occurrence in the future that they may reasonably be held to affect market value. This evidence was not speculative, distantly, imaginative or remote. Such evidence concerning the drainage and lagoon improvements was "so reasonably probable as to have an effect on the present market value of the land." This evidence based on personal observations and personal opinions of the witnesses are easily distinguished from "hypothetical projections."
Tilcon is entitled to reassessed damages in the amount of $700,000 damages less the amount of $166,000 paid leaving a balance of $534,000 plus legal interest, plus appraisal fee of $2500 for Mr. Mulready's services.
John N. Reynolds, Judge Trial Referee